IN THE UNITED STATED DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| SPIRA FOOTWEAR, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. EP-08-CA-0055 KC |
| ) | |
| STEVEN LEBOW, BYRON LEBOW and ) | |
| UNGARETTI & HARRIS, LIMITED, ) | |
| ) | |
| Defendants. ) | |

**SPIRA FOOTWEAR, INC.'S RESPONSE TO DEFENDANT UNGARETTI & HARRIS LIMITED'S MOTION TO EXCLUDE EXPERT TESTIMONY OF JOHN W. DUNBAR**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE ISSUES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

  A.  Admissibility Requirements.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

  B.  John W. Dunbar's Opinion Testimony Is Admissible. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      1.  John W. Dunbar's Opinion Is Based on Reasonable Probability. . . . . . . . . . . . . . . . . . . 2

      2.  John W. Dunbar's Opinion Is Based on Validated Methodology.. . . . . . . . . . . . . . . . . . 3

      3.  John W. Dunbar's Opinion Is Logically Connected to the Data.. . . . . . . . . . . . . . . . . . . 6

      4.  John W. Dunbar Considered Alternative Causes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

C.  The Court Should Strike the Incorporation of Dr. Becker's Report Into the Motion.. . . . . . . 8

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# TABLE OF AUTHORITIES

**Federal Cases**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). . . . . . . . . . . . . . . . . . . . . . 1

*Kumho Tire Co., Ltd. v. Carmichael*, 626 U.S. 137, 119 S.Ct. 1167, (1999). . . . . . . . . . . . . . . . . 2

**Statutes**

FED. R. EVID. 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Publications**

AICPA *Statement for Consulting Services No. 1.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

AICPA *Statement on Standards Valuation Services No. 1 (June 2007).* . . . . . . . . . . . . . . . . . . 2, 4

Porter, Michael E., *Competitive Strategy, Techniques for Analyzing Industries and Competitors*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Risk Management Association Annual Statement Studies*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## STATEMENT OF THE ISSUES

1.	Whether the opinion testimony by Plaintiff's expert on damages, John W. Dunbar, CPA, CVA, is based upon sufficient facts or data, whether it is the product of reliable principles and methods and whether John W. Dunbar, CPA, CVA has applied the principles and methods reliably to the facts of the case.

2.	Whether "incorporating" a 14 page expert's report with 26 pages of attachments as part of a Motion to Exclude Expert Testimony violates the Court's page limitation on motions.

**FACTUAL BACKGROUND**

SPIRA FOOTWEAR, INC. ("SPIRA") has brought claims against STEVEN LEBOW for breach of fiduciary duty owed by an officer and a director to a corporation, against BYRON LEBOW for breach of fiduciary duties that a director owes a corporation, against UNGARETTI & HARRIS, LIMITED ("U&H") for breach of fiduciary duties owed by an attorney to a client and against all the Defendants for conspiracy to breach fiduciary duties. Additionally, SPIRA seeks a declaratory judgment against the LEBOWS to determine whether they are entitled to indemnification of attorney's fees as well as advancement.

John W. Dunbar, CPA, CVA ("Dunbar"), expressed the following opinion: "Based upon my analysis and a reasonable degree of accounting probability, it is my opinion that Spira Footwear, Inc. suffered lost profits as of August 31, 2008 in the amount of $9,898,000.000 and as of May 31, 2009 of $10,432.00." John W. Dunbar, CPA, CVA "Calculation of Lost Profits," p. 32 ("Dunbar Report").

**ARGUMENT AND AUTHORITIES**

A.   **Admissibility Requirements.**

Rule 702 provides three factors that must satisfied if expert testimony is to be admissible: ". . . (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court established that the trial court is charged with the responsibility of reviewing and screening expert testimony to make sure that it is relevant and reliable and thus admissible. The *Daubert* case involved scientific expert testimony and the Supreme Court set forth

some non-exclusive factors to guide the district court's review. Subsequently, the Supreme Court ruled that the trial court's "gatekeeping" obligation applies not only to expert testimony based on scientific knowledge but also testimony based upon technical and other specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 626 U.S. 137, ____ 119 S.Ct. 1167, 1171 (1999). The Supreme Court went on to reiterate that *Daubert's* list of specific factors does not necessarily apply to all experts or in every case: the trial court has as much latitude in deciding how to determine reliability as it does in its ultimate reliability determination. *Id.*

**B.      John W. Dunbar's Opinion Testimony Is Admissible.**

SPIRA will focus its discussion on the basis of the four attacks launched by U&H. SPIRA will demonstrate that in each instance U&H has selectively omitted language in quoting Dunbar's opinion, and that it has ignored large sections of the Dunbar Report which address the very elements that U&H contend are missing.

**1.      John W. Dunbar's Opinion Is Based on Reasonable Probability.**

U&H first attacks Dunbar's expression of his opinion as not being based on reasonable probability. U&H does not identify Dunbar's complete opinion: it simply focused on standard disclaimer language utilized by certified public accountants and certified valuation analysts. These disclaimers appear on page 1 and in the cover letter to E. Link Beck. This disclaimer language is taken in part from the AICPA *Statement on Standards for Valuation Services No. 1 (June 2007)*. There is a very good reason for using such disclaimer language, particularly when dealing with projections or forecasts. Reports of projections or forecasts often end up in the hands of third parties for whom the report was not intended. There has been litigation generated by such third parties and accordingly the AICPA suggested applicable disclaimer language. That is why, in addition to the

disclaimer language, Dunbar states specifically that his report is not to be made available to any person other than those indicated in the report without his express written consent. September 30, 2008 letter from Dunbar to E. Link Beck.

U&H quoted Dunbar's opinion that SPIRA: "suffered lost profits as of August 31, 2008 in the amount of $9,898,000.00 and as of May 31, 2009 of $10,432,000.00." Defendant UNGARETTI & HARRIS, LIMITED's Motion to Exclude Expert Testimony of John W. Dunbar, p. 7 of 13 at ¶11 ("U&H Motion"). Dunbar's complete opinion is:

> Based upon my analysis and a reasonable degree of accounting probability, it is my opinion that Spira Footwear, Inc. suffered lost profits as of August 31, 2008 in the amount of $9,898,000.00 and as of May 31, 2009 of $10,432,000.00"

Dunbar Report, p. 32 at ¶E. Dunbar's opinion specifically states that it is based upon reasonable accounting probability. This conclusion is based upon the work he performed as set forth in the Dunbar Report.

**2.    John W. Dunbar's Opinion Is Based on Validated Methodology.**

U&H alleges that Dunbar concedes that his methodology does not conform to pertinent standards of the accounting profession. U&H Motion, p. 8 of 13 at ¶16. It then cites standard disclaimers stating that the financial forecasts were not prepared in accordance with any generally accepted accounting practice nor were they reviewed or audited by him under any guidelines established by the American Institute of Certified Public Accountants ("AICPA"). Dunbar Report, p. 35. Dunbar disclaims that he has performed an audit or review for the simple reason that he did not perform an audit or review and must disclose that if that is the case. Neither an audit nor a review were in the scope of his engagement nor would they be pertinent in a lost profits calculation. Dunbar is obligated to disclose when an engagement is different than one which would require

compliance with generally accepted accounting principles. His engagement was to calculate lost profits, if any, and in doing so he was guided by the standards set forth by the AICPA *Statement for Consulting Services No. 1* and the AICPA *Statement on Standards for Valuation Services* No. 1.

U&H thus attacked Dunbar's methodology on the basis of boilerplate disclaimer language rather than by identifying the methodology and then describing why it failed to meet "pertinent standards of the accounting profession." John W. Dunbar used a calculated, rational and logical methodology to reach his opinion. First of all, from pages 4-8 of his report, he engages in an overview of SPIRA including the history and ownership, management, physical facilities, contracts, regulatory, environmental and other factors, history of marketing and sales, and summary of positive and negative factors. This is a standard methodology utilized by accounting and valuation professionals which Dunbar utilized based upon his 30 years experience and his background and training. Having obtained a background and understanding SPIRA, Dunbar then considers economic factors which would effect SPIRA. He initially considers economic conditions as set forth on pages 9-14, all of which relate to the national economy. Dunbar then narrows his focus to that of the industry and what the outlook for the industry is anticipated to be based upon a broad overview, the competitive landscape and products, operations and technology. Dunbar sets forth some sources which he utilized in engaging in this analysis as set forth on page 15.

Next, Dunbar applies what is known in the profession as the "Porter Analysis." This involves a consideration of five factors which can impact a firm and its performance in the particular industry. The Porter Analysis was developed by Michael E. Porter in his book *Competitive Strategy, Techniques for Analyzing Industries and Competitors* and set forth at Dunbar Report p. 17. Applying the methodology set forth in the Porter Analysis allowed Dunbar to assess company

specific risk and to determine whether these factors could be the cause of adverse impact on SPIRA or whether a factor could be an advantage for SPIRA.

With this comprehensive background, Dunbar engages in financial analysis using comparisons of balance sheets of SPIRA, income statements of SPIRA and a ratio analysis. He compared SPIRA's financial trends with those set forth in the *Risk Management Association Annual Statement Studies* based upon ratio analysis with the industry-wide results. Dunbar thus could gauge SPIRA's performance with other companies in the industry. All of this is recognized methodology in the profession.

Dunbar next applies a standard methodology known as normalization. Normalization is the industry practice of making adjustments to the financial statements to determine what the financial condition of a company would be but for unusual expenditures. For example, take the case of a major shareholder in a corporation which is a tenant on property owned by the major shareholder. He has chosen not to charge the company rent in order to bolster its financial condition. A third party buyer considers acquiring the company and needs an accurate valuation. A normalizing adjustment would be to include a dollar amount for rent to determine the accurate financial performance of the company. Dunbar engages in this process in pages 23 and 24.

Having completed an examination of SPIRA, the economy, the industry, SPIRA's performance in the market utilizing the Porter Analysis, the examination of the financial performance, then and only then does Dunbar move onto his calculation of lost profits from page 26 to page 32. Dunbar relied in part upon a budget prepared by SPIRA's then Chief Financial Officer, Russell Gibson. He did so only after considering the background material and analysis as set forth in the earlier portions of his report in order to obtain a sense of perspective about whether the budget

and its projections appear to be reasonable given the many factors he discusses. Dunbar also was comfortable in relying upon the budget because it was complete and thorough: it covered all aspects of the business and included income statements, balance sheets, cash flows, inventories, borrowings and capital expenditures in a comprehensive 91 page document. Dunbar also knew that Russell Gibson's reputation for quality work is well established in the accounting community. Dunbar then went through the process of normalization of the income statement with respect to expenses and then with respect to sales based upon what they had been for the previous ten months in the year but which dropped off considerably in November and December of 2006. Recognizing that increased sales would mean increased expenses, Dunbar also calculated and applied additional costs and expenses associated with increased sales. In this manner, Dunbar used the well-recognized standard to determine lost net profits: revenues minus the expenses incurred to earn them. His calculations and computations are specifically set forth on pages 26 through 32.

Dunbar utilized recognized, logical and rational techniques to reach his ultimate opinion on lost profits based upon a reasonable degree of accounting probability.

### 3. John W. Dunbar's Opinion Is Logically Connected to the Data.

U&H takes the position that Dunbar's opinions and conclusions have been reached by him solely on the basis of that is what he says, therefore it is true. U&H could make this allegation only by ignoring Dunbar's extensive analysis and methodology described in pages 4-25 of his report. U&H attacks his statement that it was the extraordinary expenses incurred and participation in the ongoing shareholder litigation which resulted in reduced profits and effected SPIRA's ability to issue additional shares of stock and have the revenues necessary to fund continued growth. U&H Motion, p. 9 of 13 at ¶19. As described in his methodology, Dunbar applied the normalization process in

order to extract those extraordinary expenses that under normal circumstances would not have been incurred by SPIRA. The extraordinary expenses Dunbar identified total $558,000.00. His conclusion is logical and straightforward and directly based upon the data: had that money been available to SPIRA for constructive expenditures such as acquisition of inventory, continued growth and raising of additional capital, SPIRA would have been profitable and in a strong position for future profitability had it not been for Defendants' destructive expenditures.

### 4. John W. Dunbar Considered Alternative Causes.

U&H identifies factors that it alleges Dunbar failed to consider. Two things are striking about this allegation: the factors alleged by U&H that they contend Dunbar failed to consider are taken from the discussion in the Dunbar Report and many of them are patently inapplicable as explained in the Dunbar Report. For example, U&H contends that Dunbar failed to consider cost advantages created by economies of scale enjoyed by established large manufacturers and an extremely large capital investment is required to open factories and conduct research in design. With respect to manufacturing, had U&H paid attention to Dunbar's analysis of SPIRA, it would have learned that SPIRA did not incur the cost of opening and operating a factory because it outsources the manufacturing of its shoes, thus eliminating the capital expense associated with owning and operating such a factory while at the same time enjoying economies of scale. SPIRA also outsources, as discussed in Dunbar's Report, design, development and research thus eliminating the cost and expense of having the personnel and plant to perform such functions.

U&H claims that Dunbar failed to consider the banning of Plaintiff's shoe technology by various governing bodies of track and field. In fact, Dunbar noted that SPIRA had taken that ban and

used it to its advantage and had marketed itself as the outsider. Further, Dunbar considered past litigation and intellectual property disputes but the emphasis should be that these were in the past.

U&H then identifies a series of "competitive forces" which they allege Dunbar failed to consider. In fact, he considered them and also considered management's position with respect to each of the factors. U&H simply disagrees with the conclusions reached.

As noted in the explanation of Dunbar's methodology in this Response, it was only after Dunbar considered the entire background did he conclude that:

> But for the extraordinary expenses incurred in Spira's participation in the ongoing shareholder litigation, the company would have attained profitability and could have issued the additional shares of stock, providing the financial resources necessary to fund the continued growth. Inventory could have been replenished and the line of credit would not have been necessary.

Dunbar Report, p. 26. This was the result of the in-depth background analysis and consideration of all of the factors which U&H claims he ignored. These factors were considered by Dunbar and played a role not only in his conclusion about the viability of SPIRA and the effect on SPIRA's performance but also with respect to the appropriate discount factor to apply in discounting future streams of revenue to present value.

**C.     The Court Should Strike the Incorporation of Dr. Becker's Report Into the Motion.**

As the Court can tell, it is extremely difficult to provide a full description of the methodologies and factors considered by John W. Dunbar in a ten page response. This naturally is better determined by hearing directly from John W. Dunbar in testimony. Be that as it may, it is inherently unreasonable to allow U&H to incorporate a 14 page report with 26 pages of attachments into what is supposed to be ten pages of discussion supporting U&H's Motion. SPIRA cannot

possibly respond to all of the deficiencies in Dr. Becker's report and requests that the Court strike Dr. Becker's report or not consider it because it far exceeds the ten page limitation.

## CONCLUSION

John W. Dunbar's opinions are based upon sufficient facts and data, he utilized principles and methodologies recognized in the accounting and valuation profession and has identified them in his report, and he has applied these principles and methods reliably to the facts of the case as set forth in his discussion of lost profits. SPIRA requests that the Court deny the U&H Motion to exclude the expert testimony of John W. Dunbar.

Respectfully submitted,

**BECK & GIVEN, P.C.**
5915 Silver Springs Drive, Bldg. 4
El Paso, Texas 79912
(915) 544-5545
(915) 544-1620 Facsimile

By:_____/s/_____
E. Link Beck
State Bar No. 02007400
Bryan H. Hall
State Bar No. 08744800

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of December, 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System which will send notification of such filing to **Jeff Lucky**, Lucky, Enriquez, Piacenti & Smigiel, 300 E. Main, El Paso, Texas, 79901, **Randy Lee,** 3300 N. A Street, Bldg. 2-104, Midland, Texas, 79705 and **Wiley James**, James & Haugland, P.C., P.O. Box 1770, El Paso, Texas, 79949-1770.

_____/s/_____
E. Link Beck