IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| SPIRA FOOTWEAR, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-08-CV-0055 |
| | § | |
| STEVEN LEBOW, BYRON LEBOW, | § | |
| JACKSON WALKER, L.L.P., and | § | |
| UNGARETTI & HARRIS, LTD., | § | |
| | § | |
| Defendants. | § | |

**ORDER**

On this day, the Court considered Steven Lebow's "Motion for Clarification of the Court's Order of October 2, 2009" ("Motion for Clarification") and Byron Lebow's "Motion to Enforce This Court's October 2, 2009 Order by Dismissal with Prejudice of Spira Footwear, Inc.'s Claims" ("Motion to Enforce"). For the reasons sets forth herein, Steven Lebow's Motion is **GRANTED** and Byron Lebow's Motion is **GRANTED** in part. The case is **DISMISSED** with prejudice.

**I.   BACKGROUND**

On August 10, 2007, before Spira Footwear, Inc. ("Spira') filed the instant case, Byron and Steven Lebow (collectively "the Lebows") filed a complaint in Nevada state court ("Nevada litigation"). Spira's Resp. to Mot. for Clarification 2. In the Nevada litigation, the Lebows sought indemnification and advancement of fees from Spira. *Id.* Specifically, the Lebows attempted to recover attorneys' fees expended in defending themselves against a lawsuit pending in El Paso County Court entitled *David Krafsur and Francis Levert v. Andrew Krafsur, et al.*, Cause No. 2005-8707. Steven Lebow's Reply 1- 2. During the pendency of the Nevada litigation, Spira filed another lawsuit against Byron and Steven Lebow, Jackson Walker, LLP, and Ungaretti & Harris, Ltd. in El Paso County Court . *Id.* at 2. That case was subsequently removed to this Court by Ungaretti & Harris and forms the instant action. The Lebows

1

subsequently filed a motion for summary judgment in the Nevada litigation which the Nevada court granted on July 23, 2008. *Id.*; Spira's Resp. to Mot. for Clarification Ex. D. The Nevada court set a hearing on August 18, 2008, to determine the amount of attorneys' fees incurred by the Lebows up to that time. Steven Lebow's Reply 2; Spira's Resp. to Mot. for Clarification Ex. D. On August 14, 2008, prior to this Court's August 29, 2008 Order requiring Spira to advance fees incurred in the instant case ("August 2008 Order"), the Lebows submitted invoices to the Nevada court totaling approximately $153,000. *See* Spira's Resp. to Mot. for Clarification Ex. D. In the Nevada court, the Lebows sought advancement of approximately $43,036.78 in fees incurred in the instant case. *Id.*; Steven Lebow's Reply 2. On October 8, 2008, the Nevada court entered an Order requiring payment of fees, finding that Spira owed approximately $153,000 to the Lebows. Steven Lebow's Reply 4; Spira's Resp. to Mot. for Clarification Ex. G, at 10.

On August 29, 2008, this Court entered an Order in the instant case finding that Spira was bound by its bylaws to advance reasonable expenses incurred by the Lebows as former directors and officers of Spira in defending themselves in the instant case. August 29, 2008 Order at 5, 22, 32-33. Spira failed to comply with the Court Order. Therefore, in January 2009, the Court issued a further Order requiring Spira to pay to the Lebows all reasonable attorneys' fees and expenses which remained unpaid as of January 16, 2009. Order, January 16, 2009 at 8 ("January 2009 Order"). Moreover, as a sanction, the Court stayed the case pending Spira's compliance with the August 2008 and January 2009 Orders. *Id.* at 7-8.

Approximately six months later, on July 20, 2009 ("July 2009 Order"), the Court ordered Spira to show cause why its claims should not be dismissed for failing to comply with the August 2008 and January 2009 Orders. Order, July 20, 2009, at 1. On July 31, 2009, three days before their Response to the Order to show cause was due, Spira paid $143,839.32 in attorneys' fees and expenses to the Lebows. *See* Spira Footwear Inc.'s Showing of Cause Why Its Claims Should Not Be Dismissed 3. However,

Spira refused to pay $117, 571.54 in claimed fees due to a lack of itemized bills. *Id.* at 4.

On October 2, 2009, the Court entered an Order ("October 2009 Order") finding that Spira had engaged in "purposeful delay or contumaciousness warranting a Federal Rule of Civil Procedure 41(b) dismissal." October 2009 Order 14. The basis for this holding, including Spira's repeated flouting of Court orders, its misrepresentations in pleadings filed with the Court, and its dilatory tactics, was set out in detail in that Order. *See id.* at 9-14. Further, the Court found that attempts to apply lesser sanctions had failed, justifying dismissal of Spira's claims. *Id.* at 14-16. However, the Court chose not to dismiss Spira's claims. Because of the harsh result of dismissal, the Court instead gave Spira one final chance to comply with its orders. *See id.* at 16.

In the October 2009 Order, the Court ordered Spira to pay the $117,571.54 into the registry of the Court, to be disbursed to the Lebows. *Id.* The Court did not allow Spira to challenge the reasonableness of those fees due to Spira's failure to raise any objection over the many months that it had been aware of those invoices. *Id.* As to future invoices, the Court ordered Spira to deposit into the registry of the Court the entire balances owed on such future invoices within ten days of their receipt. *Id.* at 16. Further, the Court again warned Spira that "should Spira fail to comply with this Order or with any future orders of the Court, its suit will be dismissed with prejudice." *Id.* The Court also admonished that any "further misrepresentations or limited disclosures will result in the immediate dismissal of the instant case." *Id*

In a letter dated October 2, 2009, the same day as the Court's October 2009 Order, Spira's counsel wrote to counsel representing the Lebows in the Nevada litigation, "[Spira] has paid to [Texas counsel for Defendant Steven Lebow] the sum of $143,839.32 in advancement of fees as ordered [sic] the United States District Judge. Taking the amount paid against the amount of the Nevada judgment results in a balance due in the amount of $15,683.22." Mot. for Clarification Ex. B. The letter included a proposed "Release of Judgment" in the Nevada litigation as well as a check for $15,683.22. *See id.*; *see*

3

*also* Spira Footwear, Inc.'s Resp. to Mot. for Clarification 5-6. The Release provided that the Lebows "acknowledge that [Spira] has paid in full all amounts due pursuant to the Judgment (Nunc Pro Tunc) filed in this Court on September 24, 2009 and the Plaintiffs release the same in full with respect to [Spira]." Mot. for Clarification Ex. B.

Spira never apprised this Court of its intent to apply fees incurred in this litigation to the Nevada litigation, nor had it ever provided any explanation as to why this might be justified. Steven Lebow forwarded a copy of the October 2, 2009 letter to the Court as part of his Motion for Clarification. Mot. for Clarification 2. Spira was aware that the overlap in fees only amounted to approximately $43,000 yet it sought to apply the entire $143,839.32 paid for the fees incurred in the instant case to the fees due in the Nevada litigation. *See* Spira's Resp. to Mot. for Clarification 3-4.

## II. DISCUSSION

### A. Standard

A district court may involuntarily dismiss a pending case if the plaintiff fails to comply with an order of the court. FED. R. CIV. P. 41(b) ("If the plaintiff fails to prosecute or to comply with . . . a court order, a defendant may move to dismiss the action or any claim against it."). An involuntary dismissal pursuant to Rule 41(b) may be at the request of a party. *See Martinez v. Johnson*, 104 F.3d 769, 772 (5th Cir. 1997). Unless the dismissal order indicates otherwise, such a dismissal "operates as an adjudication on the merits." FED. R. CIV. P. 41(b).

The Fifth Circuit has held that "dismissal with prejudice is a harsh sanction that is reserved for egregious cases," and that it is appropriate only when there is also "a clear record of delay or contumacious conduct." *See Thanksgiving Tower Partners v. Anros Thanksgiving Partners*, No. 92-1209, 1993 WL 35716, at *4 (5th Cir. Feb. 5, 1993) (citing *Rogers v. Kroger Co.*, 669 F.2d 317, 320 (5th Cir. 1982)); *see also Long v. Simmons,* 77 F.3d 878, 880 (5th Cir. 1996) ("A dismissal with prejudice is appropriate only if the failure to comply with the court order was the result of purposeful

delay or contumaciousness . . . ."). Purposeful delay warranting dismissal with prejudice "must be longer than just a few months" and is characterized by "significant periods of total inactivity." *McNeal v. Papasan*, 842 F.2d 787, 791 (5th Cir. 1988) (citing *Morris v. Ocean Sys.*, 730 F.2d 248, 252 (5th Cir.1984)). Alternatively, for conduct to be "contumacious," it must amount to more than mere negligence. *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 327 (5th Cir. 2008) ("A party's negligence–regardless of how careless or inconsiderate–does not make conduct contumacious; 'instead it is the stubborn resistence to authority which justifies a dismissal with prejudice.'"). While other circuits have not required bad faith on the part of the plaintiff, the Fifth Circuit has held that plaintiff's behavior must be either intentional or in bad faith. *See Spurlock v. Scott*, No. 01-40583, 2001 WL 1485818, at *1 (5th Cir. Nov. 12, 2001) (holding that "the exercise of [Rule 41(b)] should be confined to instances of bad faith or willful abuse of the judicial process"); *see also Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995).

In addition, the Fifth Circuit has required district courts to first employ lesser sanctions, such as fines or dismissals without prejudice, *see Bryson v. United States*, 553 F.3d 402 (5th Cir. 2008), unless these sanctions "would not serve the best interests of justice." *See Callip v. Harris County Child Welfare Dep't*, 757 F.2d 1513, 1521 (5th Cir. 1985). Although the Fifth Circuit appears split on the issue of whether lesser sanctions are *required* prior to dismissing a case under Rule 41(b), *compare Long*, 77 F.3d at 880, with *Berry v. CIGNARSI-CIGNA*, 975 F.2d 1188, 1190 (5th Cir. 1992), the underlying purpose of first requiring lesser sanctions is to ensure that plaintiffs are given a fair opportunity to comply with the orders of the court. *See Bryson*, 553 F.3d at 404 (holding that the plaintiff "clearly [was] not deterred by lesser sanctions such as dismissals without prejudice," and that dismissal was not an abuse of discretion). Lesser sanctions acknowledge that a Rule 41(b) dismissal "is an extreme sanction that deprives a litigant of the opportunity to pursue his claim." *Callip*, 757 F.2d at 1519. For this reason, the Fifth Circuit looks to see whether there was a pattern consisting of "warning, ultimatum, and subsequent default" prior to a

5

Rule 41(b) dismissal. *See Thanksgiving Tower Partners*, 1993 WL 35716, at *8. A stay operates as a lesser sanction for purposes of Rule 41(b). *See Price v. McGlathery*, 792 F.2d 472, 475 (5th Cir. 1986).

The Fifth Circuit also generally looks for one of the following aggravating factors which further justify dismissal: "(1) delay caused by [the] plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct." *Millan*, 546 F.3d at 326 (citing *Price*, 792 F.2d at 474).

**B.     Involuntary Dismissal Pursuant to Rule 41(b)**

In the October 2009 Order, the Court found that Spira's conduct in the instant case warranted a Rule 41(b) dismissal of its case. The Court described in detail Spira's dilatory tactics, its recalcitrant behavior at nearly every stage of the proceedings, and its misrepresentations before the Court. The Court, nevertheless, allowed the case to continue, providing Spira with one last chance to advance the fees which it concedes it owes to the Lebows and to prosecute its case. Spira has failed to make good use of this final chance. Despite these unambiguous warnings from the Court, Spira has continued with its antagonistic, underhanded, and dilatory tactics. Spira's limited disclosures and shenanigans have continued, resulting in further delays and complications in this case. The Court is no closer to addressing the ultimate issues in this case than it was in October 2009, January 2009, or August 2008 or even February 2008 when Spira filed its Complaint in this case.

In the August 2008, January 2009, and October 2009 Orders, the Court clearly ordered Spira to advance fees and expenses in this case. Spira never notified the Court, and the Court was unaware of, the possibility of duplicate recovery of a portion of the fees by the Lebows in the Nevada litigation. There is no dispute that the $143,839.32 Spira has paid to the Lebows was incurred in the litigation before this Court; Spira admits as much. Resp. to Motion for Clarification 5. Spira knew for quite some time, apparently in August 2008, but certainly before it paid the $143,839.32 to the Lebows, that the Lebows

6

were also attempting to recover a portion of these fees in the Nevada litigation. Yet, Spira never raised the issue with this Court. Spira never challenged the reasonableness of the fees and expenses from the time that the Court ordered them to be paid on August 29, 2008 until its Response to the Court's Order to show cause nearly one year later. And even then it failed to mention the Nevada litigation. Further, there does not appear to be anything untoward about the Lebows' attempt to collect certain of the fees incurred in this case in the Nevada litigation. Indeed, the Lebows initiated the Nevada litigation seeking advancement of fees for defending themselves in the various cases brought by Spira against or involving them. And the fees in question were sought in the Nevada case prior to this Court's ordering Spira to advance fees in this case.

It was foolish of Spira to pay the fees without first apprising this Court that there was a partial overlap in fees claimed before another court. But it was underhanded for Spira to then seek to apply all of the fees paid in this case to the fees due in the Nevada litigation and to attempt to obtain a release from liability in that case based upon this assertion. And Spira admits, at least to this Court, that it paid the $143,839.32 for fees incurred in this case. The Lebows initiated the Nevada litigation in August 2007 to obtain advancement of attorneys' fees from Spira well before Spira commenced the instant suit in this Court. Indeed, the Lebows contend, and Spira agrees, that only approximately $43,000 out of $153,000 sought in the Nevada case overlap. Spira's October 2, 2009, letter seeking to apply the fees "as ordered [sic] the United States District Judge" to the fees due in the Nevada case looks very much look an attempt to deceive the Lebows' attorney in the Nevada litigation. Without the application of the $143,839.32 paid for the fees incurred in this case, the $15,683.22 check could not represent the balance due for the fees sought in the Nevada litigation as calculated by Spira.

Spira's precise intention in that letter is of small moment to this Court. What is of concern is the fact that this incident is one more in a continuing pattern of misrepresentation, recalcitrance, and delay from Spira. If, as Spira claims, the $143,839.82 was paid to the Lebows for fees incurred in this case,

7

why was it attempting to apply that amount towards fees incurred in another case, and seeking a release from liability in that case based upon this payment? Spira explains that it was attempting to make an offer of settlement in the Nevada litigation. The Court finds this implausible. The October 2, 2009 letter fails to mention any such attempt at negotiation, just as it fails to mention that the fees were in fact ordered by this Court for fees incurred in this case. Either Spira has misled the Court, yet again, when it explains that the payment was made in satisfaction of fees incurred in this case, or Spira is behaving in a contumacious manner by intentionally blurring the line between the fees due in the two distinct cases. Either way this conduct is yet another example of Spira's underhandedness.

Spira was well aware that the overpayment only amounted to approximately $43,000 out of a total amount due in Nevada of $153,000; nevertheless, it attempted to apply the entire $143,839.32 to the Nevada litigation. Spira also claims that the intent of the October 2, 2009, letter was merely an attempt to avoid double payment of fees. But again the letter says no such thing. As explained above, the letter instead applies the entire amount of the fees advanced in this case towards the Nevada judgment and submits a check for the balance due in the Nevada litigation, along with a release in complete satisfaction of the Nevada judgment. Such is not the means, at least not by a party acting in good faith, to avoid possible overpayment of $43,000.

Furthermore, even when Spira knew that the Court had involved itself in the fee advancement process in an attempt to expedite that process, still Spira failed to apprise the Court of its concern regarding the partial double recovery of fees. One would think that Spira would work to facilitate the Court's involvement in expediting the fee advancement as a means to more quickly bring its claims to trial. Instead, Spira's machinations have placed the Court in the middle of a new dispute springing from Spira's attempt to confuse the fees due in the two cases. The Court has already gone to great lengths to ensure that Spira abide by the Court's Orders, which only enforce obligations Spira itself created by setting up accounts, reviewing challenges and itemizing invoices. The Court has had to babysit Spira and

8

Spira is taking advantage of it. The Court will not tolerate that.

Based upon Spira's conduct as set forth in this Order as well as the Court's August 2008, January 2009, and October 2009 Orders, the Court finds that the record is clear that Spira has engaged in delay and contumacious conduct warranting dismissal of its claims. Spira has pursued these various tactics intentionally, and, despite the Court's repeated attempts to have Spira follow the law, Spira has continued on this path. The Court has employed lesser sanctions including admonitions, a six-month stay in the case, and refusing to allow Spira to challenge certain fees in the hope that Spira would comply with its Orders. There is no question that Spira has been given more than a fair opportunity, and still Spira intentionally acts in ways that cause further delay and prejudice to Defendants. It is clear that Spira does not intend to diligently prosecute its claim; rather, it is abusing the judicial process in an effort to antagonize the opposing parties. Accordingly, due to Spira's continuing unacceptable conduct in this case, Spira's case is **DISMISSED** with prejudice.

### III. CONCLUSION

For the reasons set forth in the Court's October, 2, 2009 Order as well as for the reasons set forth above, the Motion for Clarification (Doc. No. 94) is **GRANTED** in part as to dismissal and **DENIED** in part as to its prayer for $261,464.86 in additional fees. The Motion to Enforce (Doc. No. 104) is **GRANTED**. Spira's claims are **DISMISSED**.

**IT IS FURTHER ORDERED THAT** Spira's objections to the disbursement of the fees on deposit in the registry of the Court are **OVERRULED**.

**IT IS FURTHER ORDERED THAT** the funds held in the Court's registry shall be disbursed as follows:

```
     Steven Lebow:  $40,715.40 for fees incurred in January 2009
     Steven Lebow:  $14,868.27 for fees incurred from January 2009 to October 2, 2009
                    --------------------------------
Steven Lebow  Total:           $55,583.67

     Byron Lebow:           $76,856.14 for fees incurred from September 2008 to January 2009
```

9

| | | |
|---|---|---|
| Byron Lebow: | | $16,415.41 for fees incurred from February 2009 through October 9, 2009 |

------------------------------

Byron Lebow   Total:        $93,271.55

Grand Total:        $148,855.22

**IT IS FURTHER ORDERED THAT**, to the extent the Lebows have any further requests for advancement of fees, such requests are **DENIED**.

**IT IS FURTHER ORDERED THAT** any remaining counterclaims are **DENIED**.

**IT IS FURTHER ORDERED THAT** all pending motions are denied as moot.

The Clerk shall close the case.

**SO ORDERED.**

**SIGNED** on this 3rd day of December, 2009.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE